# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| T'NELL THOMAS, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) Case No.: 1:17-CV-0023-VEH |
| | ) |
| DOUGLAS REED AIGEN, et al., | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

**I.  Introduction**

Plaintiffs T'Nell Thomas and Clarence Joseph initiated this personal injury action on January 5, 2017, against Defendants Douglas Reed Aigen ("Mr. Aigen") and Hi Mountain Trucking, Inc. ("Hi Mountain"). (Doc. 1). Pending before the Court is Plaintiffs' Motion for Leave To Amend Complaint (doc. 48) (the "Leave Motion") filed on December 1, 2017, pursuant to Rule 15 of the Federal Rules of Civil Procedure.[1]

In their Leave Motion, Plaintiffs seek to add 3 new defendants to this litigation: Hi American Transportation, Inc. ("Hi American"), Dublin Logistics, Inc. ("Dublin"), and Qualitas Insurance Company ("Qualitas"). (Doc. 48 at 1 ¶ 3). Plaintiffs also seek

---

[1] The deadline for Plaintiffs to amend under the Scheduling Order expired on December 1, 2017. (Doc. 40 at 2 ¶ B).

to assert a declaratory judgment count relating to insurance coverage. (Doc. 48 at 2 ¶ 5). Mr. Aigen and Hi Mountain do not oppose Plaintiffs' Leave Motion. (Doc. 48 at 1 ¶ 1).

Attached to the Leave Motion is Plaintiffs' proposed second amended complaint. (Doc. 48-1). Count One is a negligence claim asserted against Mr. Aigen, Hi Mountain, Hi American, and Dublin. (Doc. 48-1 at 4-5 ¶¶ 20-24). Count Two is a wantonness claim asserted against this same set of parties. (*Id.* at 5-7 ¶¶ 25-29). Count Three is a negligent and/or wanton hiring, training, and entrustment claim asserted against Hi Mountain, Hi American, and Dublin. (*Id.* at 7-8 ¶¶ 30-33). Finally, Count Four is a claim filed against Mr. Aigen, Hi Mountain, and Qualitas pursuant to the Declaratory Judgment Act (the "Act"), 28 U.S.C. § 2201(a), regarding insurance coverage for punitive damages. (Doc. 48-1 at 8-10 ¶¶ 34-39).

For those reasons explained below, the Leave Motion is **DENIED WITHOUT PREJUDICE** to Plaintiffs' right to refile their motion, propose a new second amended complaint, and otherwise address the Court's jurisdictional/discretionary concerns as set out below.

## II. Standards

### A. General Principles Governing Subject Matter Jurisdiction

Unlike state courts, federal tribunals are bodies of limited jurisdiction, meaning

that the grounds for the Court's jurisdiction over the claims asserted by the plaintiff must be present at the time the complaint is filed and must be obvious on the face of the complaint. FED. R. CIV. P. 8(a). The law is clear that Plaintiffs, the parties seeking to invoke federal jurisdiction in this case, have the burden to demonstrate that the Court has subject matter jurisdiction over each claim. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785, 80 L. Ed. 1135 (1936) ("They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor …. [and a]s he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court.").

Further, "a federal court has an independent obligation to review its authority to hear a case before it proceeds to the merits." *Mirage Resorts, Inc. v. Quiet Nacelle Corp.,* 206 F.3d 1398, 1400-01 (11th Cir. 2000). Consequently, the Court cannot ignore jurisdictional concerns even if the parties have none.

Relatedly, the parties can neither manufacture the existence nor waive a want of subject matter jurisdiction. *See, e.g., Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18, 71 S. Ct. 534, 542, 95 L. Ed. 702 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties."); *Sosna v. Iowa*, 419 U.S. 393, 398, 95 S. Ct. 553,

556-57, 42 L. Ed. 2d 532 (1975) ("While the parties may be permitted to waive nonjurisdictional defects, they may not by stipulation invoke the judicial power of the United States in litigation which does not present an actual 'case or controversy,' and . . . we feel obliged to address the question of mootness [or ripeness] before reaching the merits of appellant's claim.") (citation omitted); *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1000 (11th Cir. 1982) ("The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case[,] and cannot be waived or otherwise conferred upon the court by the parties.") (footnote omitted).

## B. Ripeness

The Eleventh Circuit has explained that the doctrine of ripeness–one subset of Article III's framework for confirming the presence of a constitutionally-sound case or controversy–involves both constitutional <u>and</u> prudential considerations:

> When determining if a claim is ripe for judicial review, we consider both constitutional and prudential concerns. In some circumstances, although a claim may satisfy constitutional requirements, prudential concerns "counsel judicial restraint." *See Digital*, 121 F.3d at 589 (quoting *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 n.12 (D.C. Cir. 1986)). Our inquiry focuses on whether the claim presented is "of sufficient concreteness to evidence a ripeness for review." *Id.* Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes. *See id.*

> Our ripeness inquiry requires a two part "determination of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* (citing *Abbott Lab. v. Gardner*, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 1515-16, 18 L. Ed. 2d 681 (1967)[, *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S. Ct. 980, 984, 51 L. Ed. 2d 192 (1977)]; *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)). . . .
>
> We have also recognized that the ripeness doctrine . . . protects courts from abusing their role within the government and engaging in speculative decision-making . . . .

*Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005).

Further, if a claim is not ripe for review, the Eleventh Circuit has clarified that:

> [T]he dismissal . . . [is one] without prejudice. Because the general-access claim was not ripe for review, the district court did not have subject matter jurisdiction over the claim. *See Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 591 (11th Cir. 1997) ("The determination of ripeness 'goes to whether the district court had subject matter jurisdiction to hear the case.'" (citing *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.7 (11th Cir. 1989))). <u>Thus, the district court could not have adjudicated the merits of the general-access claim or dismissed that claim with prejudice</u>. *See Crotwell v. Hockman–Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984) (changing a dismissal "with prejudice" to a dismissal "without prejudice" on the basis that "the court lacked subject matter jurisdiction over the action" and hence "had no power to render a judgment on the merits").

*Georgia Advocacy Office, Inc. v. Camp*, 172 F.3d 1294, 1299 (11th Cir. 1999) (emphasis added).

### III. Analysis

Plaintiffs maintain that "[t]his Court has original jurisdiction over this action

5

under the provisions of 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs." (Doc. 48-1 at 2-3 ¶ 7).[2] "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)).

### A. Plaintiffs' Personal Injury Counts

The Court first turns to a jurisdictional analysis of Plaintiffs' personal injury counts. The Court perceives no problems with the citizenship allegations made by Plaintiffs. (Doc. 48-1 at 1-2 ¶¶ 1-7).

However, the amount-in-controversy allegation is flawed because Plaintiffs do not clarify whether the claims of any <u>individual</u> plaintiff exceed the $75,000 threshold. Instead, Plaintiffs state generally that "[t]he amount in controversy exceeds the sum of $75.000.00, exclusive of interest and costs." (Doc. 48-1 at 3 ¶ 7). Section 1332(a)'s amount-in-controversy requirement does not allow the claims of multiple plaintiffs to be aggregated to reach the jurisdictional threshold, *see Zahn v. Int'l Paper Co.,* 414 U.S. 291, 301, 94 S. Ct. 505, 512, 38 L. Ed. 2d 511 (1973), *superseded by*

---

[2] Plaintiffs' proposed second amended complaint has two paragraphs numbered "7". This reference is to the second one.

*statute on other grounds as stated in Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566-67, 125 S. Ct. 2611, 2625, 162 L. Ed. 2d 502 (2005), and the claims of <u>at least one</u> of the individual plaintiffs must exceed the amount-in-controversy threshold for the Court to assert diversity jurisdiction. *See Exxon Mobil*, 545 U.S. at 559, 125 S. Ct. at 2620 (holding that if the claims of a single plaintiff meet the jurisdictional threshold, the court may assert supplemental jurisdiction over additional plaintiffs' claims).

Additionally, to the extent that the personal injury claims of one of the individual plaintiffs do potentially fall below the jurisdictional threshold to support diversity jurisdiction, Plaintiffs' proposed second amended complaint fails to properly invoke 28 U.S.C. § 1367–the federal statute for supplemental jurisdiction–to permit the exercise of subject matter jurisdiction over state law claims that could not otherwise be brought originally in federal court. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

Thus, Plaintiffs' jurisdictional allegations are insufficient to invoke diversity jurisdiction (and, if needed, supplemental jurisdiction) over Counts One, Two, and

Three of their proposed second amended complaint.

### B. Plaintiffs' Declaratory Judgment Count

In Count Four of their proposed second amended complaint (as mentioned above), Plaintiffs seek a declaration that the policy of insurance provided by Qualitas to its insureds, Mr. Aigen and Hi Mountain, is not subject to a punitive damages exclusion. Plaintiffs indicate that a copy of the relevant policy of insurance is attached to their proposed second amended complaint. (Doc. 48-1 at 8 ¶ 35). However, no such exhibit appears with the CM/ECF version of the Leave Motion filed with the Court.

The Act provides that "[i]n any case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Nonetheless, "[e]ven if there is a case or controversy, 'district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.'" *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1376 (Fed. Cir. 2012) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S. Ct. 2137, 2140, 132 L. Ed. 2d 214 (1995)).

### 1. Constitutional Jurisdictional Concerns

As a general matter, the Court cannot exercise subject matter jurisdiction over an unripe claim. The Court also cannot provide the parties with an advisory opinion concerning coverage. Absent from Count Four–and running afoul of these commonly understood principles–is an express allegation that Qualitas has taken a position adverse to Plaintiffs regarding coverage of their potential punitive damages claim against Mr. Aigen and Hi Mountain. Plaintiffs also do not allege whether Mr. Aigen and Hi Mountain have taken any position regarding coverage for punitive damages under the policy. A theoretical (only) dispute over coverage is insufficient to establish subject matter jurisdiction.[3]

Moreover, as the underlying liability of Mr. Aigen and Hi Mountain is still uncertain, the Court has questions about whether Plaintiffs' declarative claim concerning the punitive damages exclusion–a subset of the larger issue of Qualitas's duty to indemnity these two defendants–is ripe for adjudication <u>even if an actual dispute over whether Qualitas must cover the claim for punitive damages against its insureds presently exists</u>. *Compare Am. Fid. & Cas. Co. v. Pennsylvania*

---

[3] In their Leave Motion, Plaintiffs assert that "there is a dispute whether the punitive damage exclusion is effective, and, if so, whether it is trumped by the MCS-90 endorsement" (doc. 48 at 2 ¶ 5), but similarly do not indicate the positions of Mr. Aigen, Hi Mountain, or Qualitas.

*Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960) ("The District Court was careful to make his dismissal without prejudice to those further rights, and it was well within its considered judicial discretion to decline to express legal opinions on academic theoreticals which might never come to pass."),[4] *and Allstate Ins. Co. v. Employers Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) ("We have held that no action for declaratory relief will lie to establish an insurer's liability in a policy clause contest . . . until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize." (citing *Am. Fidelity*, 280 F.2d at 461)), *and Great N. Paper Co. v. Babcock & Wilcox Co.*, 46 F.R.D. 67, 70 (N.D. Ga. 1968) (treating *Am. Fidelity* as a constitutional dismissal and finding that dispute over indemnity "does not become a relevant 'case or controversy' for judicial purposes until underlying liability is established"), *with Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 274, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941) (concluding that even though the underlying action was still pending, "[i]t is clear that there is an actual controversy between the petitioner [*i.e.*, the insurer] and the insured"), *and Edwards v. Sharkey*, 747 F.2d 684, 686, 687 (11th Cir. 1984) (describing *Am. Fidelity*

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

as a discretionary dismissal, but alternatively indicating that "even if there was no 'case or controversy' before the district court because of the lack of a judgment against the insured, the settlement of the tort actions provides the necessary establishment of the insured's liability"), *and Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 775 n.10 (11th Cir. 2011) (rejecting ripeness challenge on the basis of *Maryland Casualty* holding and distinguishing *Am. Fidelity* as an appeal "involv[ing] how liability for unresolved claims should be apportioned between several insurance companies"), *and MacMillan-Bloedel, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 558 F. Supp. 596, 599, 600 (S.D. Ala. 1983) (characterizing *Am. Fidelity* as a discretionary dismissal and concluding that "[e]ven if the plaintiff had such standing, the court in the exercise of discretion would decline to entertain the [indemnity] action at this time"), *and Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp. 2d 1205, 1210 (S.D. Ala. 2005) ("Based on *Maryland Casualty*, the consistent approach of other circuits, and the absence of any contrary Eleventh Circuit precedent, the Court concludes that the complaint presents an 'actual controversy' under the Act despite the absence of a verdict or settlement against the plaintiff's insureds."); *cf. also Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1013 (Ala. 2005) (agreeing that a duty-to-indemnify determination is "premature" because "[w]hether there is a duty to indemnify under

the policy will depend on the facts adduced at the trial . . . .").

Further, this Court has recently held in an insurance coverage case (involving both the duty to defend and the duty to indemnify) that it cannot retain jurisdiction over an unripe indemnity claim. Instead, the Court must dismiss that claim without prejudice for lack of subject matter jurisdiction–just as it would with any unripe claim asserted outside of the insurance coverage context. *See Penn-Star Ins. Co. v. Swords*, No. 4:17-CV-1041-VEH, 2017 WL 4180889, at *8-9 (N.D. Ala. Sept. 21, 2017) (relying upon analysis in *Canal Insurance Co. v. INA Trucking, LLC*, No. 1:16-CV-82-MHT-SRW, 2017 WL 1146984 (M.D. Ala. Mar. 10, 2017), to persuasively support dismissal of unripe indemnity claim).[5]

## 2. Statutory Jurisdictional Concerns

Plaintiffs do not specifically address the statutory basis that they rely upon for this Court's exercise of subject matter jurisdiction over their proposed declaratory count involving Mr. Aigen, Hi Mountain, and Qualitas. As stated above, Plaintiffs generally assert that subject matter jurisdiction exists over the entire action pursuant to 28 U.S.C. § 1332. However, verifying the existence of subject matter jurisdiction is more precisely a claim-specific process. *See, e.g., Santiago-Lugo v. Warden*, 785

---

[5] The parties in *Swords* agreed that the indemnity claim was not ripe. *Swords*, 2017 WL 4180889, at *7.

F.3d 467, 471 (11th Cir. 2015) ("This Court and the district court must have subject matter jurisdiction over a claim in order to decide it on the merits." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102, 118 S. Ct. 1003, 1012-16, 140 L. Ed. 2d 210 (1998))); FED. R. CIV. P. 8(a)(1) ("A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support[.]").

In repleading, Plaintiffs must clarify which statute(s) they rely upon to support subject matter jurisdiction (*i.e.*, diversity jurisdiction, supplemental jurisdiction, or both) and explain in their accompanying brief with supporting case authority why such statute or statutes give this Court subject matter jurisdiction over this declaratory count.

To the extent that Plaintiffs rely upon § 1332, then they must also address whether a realignment of the parties is appropriate for Plaintiffs' declaratory count. For example, if Mr. Aigen and Hi Mountain agree with Plaintiffs' position that the punitive damages exclusion does not apply to Plaintiffs' underlying personal injury claims (and Qualitas disagrees with Plaintiffs, Mr. Aigen, and Hi Mountain), then a realignment of the parties would mean that diversity of citizenship no longer exists, as Hi Mountain and Qualitas are <u>both</u> allegedly citizens of California.

13

If relying upon § 1332, Plaintiffs must also address why the amount-in-controversy component is satisfied. "The fact that the plaintiffs seek declaratory relief under 28 U.S.C. § 2201, does not absolve them of the necessity of bringing themselves within a jurisdictional statute." *Appling Cty. v. Mun. Elec. Auth. of Georgia*, 621 F.2d 1301, 1303 (5th Cir. 1980). When a plaintiff is seeking declaratory relief under an insurance policy, the "jurisdiction is based on a claim for indeterminate damages . . . and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356–57 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072-77 (11th Cir. 2000)).

In their current proposed second amended complaint, Plaintiffs do not quantify the value of their declaratory claim. Plaintiffs also do not address whether this Court may even consider the value of an unripe indemnity claim when evaluating satisfaction of the amount-in-controversy prong. These omissions leave any reliance upon § 1332 as a basis for subject matter jurisdiction over this new count lacking.

## IV. Conclusion

Accordingly, the Leave Motion is **DENIED WITHOUT PREJUDICE** to

Plaintiffs' right to refile their motion and propose a new second amended complaint that adequately addresses all the jurisdictional issues discussed above.

Additionally, if Plaintiffs choose to reassert their declaratory count, then they must attach a copy of the relevant insurance policy. Plaintiffs further must brief the Court on the following issues related to their proposed declaratory judgment claim:[6] (i) the reasons why they contend this Court should find that their declarative claim is both constitutionally <u>and</u> prudentially ripe; (ii) to what extent the Court (because diversity has been invoked as the basis for original jurisdiction) must (or should) rely upon Alabama law regarding "premature" indemnity claims (or the laws of another jurisdiction) to inform its determination concerning constitutional and prudential ripeness;[7] (iii) if invoking § 1367, the reasons why Plaintiffs contend that their insurance coverage claim is "so related" to their personal injury claims (which provide original jurisdiction) "that [it] form[s] part of the same case or controversy";[8]

---

[6] Plaintiffs must use pinpoint citations to all authorities included in their brief.

[7] "'Under the *Erie* doctrine, a federal court adjudicating state law claims applies the substantive law of the state.'" *Sphinx Intern., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227 (11th Cir. 2005) (quoting *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1232 (11th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938))). Additionally, the insurance policy may have a choice-of-law provision that could impact this analysis.

[8] *Cf. Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1242 (11th Cir. 2007) ("The Title VII claim was properly before the district court, and the state law claims were part of the same nucleus of operative facts that allows the district court to assert supplemental jurisdiction over them in accord with 28 U.S.C. § 1367." (citing *United Mine Workers v. Gibbs*,

(iv) if invoking § 1332, to what extent a realignment of the parties is necessary to evaluate the existence of diverse citizenship; (v) if invoking § 1332, to what extent the Court can consider the value of an unripe declarative claim concerning coverage for punitive damages to substantiate the amount-in-controversy component;[9] and (vi) to what extent the Court may discretionarily decline to exercise jurisdiction over the coverage count on judicial-resource grounds (and assuming that subject matter jurisdiction over it does exist) given that Plaintiffs are not are seeking a coverage

---

383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966))).

[9] If Plaintiffs take the position that this Court can consider the value of an unripe policy exclusion claim when evaluating the amount in controversy, they must identify authority that adopts such an approach and also must address the reasoning utilized in the following cases that hold differently in the context of an unripe bad-faith claim (arising under Florida law). *Cf. Brown v. Safeco Ins. Co. of Illinois*, No. 6:13-CV-1982-ORL-31, 2014 WL 1478833, at *1 (M.D. Fla. Apr. 14, 2014) ("[T]he Court abated Plaintiff's bad faith claim as premature, and a non-ripe bad faith claim has zero value with regard to the amount in controversy."); *Marquez v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-CV-241-ORL-36, 2014 WL 2968452, at *2 (M.D. Fla. June 30, 2014) (rejecting insurer's argument that "the *Brown* decision was *based* upon the bad faith claim being abated" and concluding instead that, "the value of Plaintiff's bad faith claim is not contingent on that claim being dismissed or abated") (emphasis in original); *Wallace v. Geico Gen. Ins. Co.*, No. 8:14-CV-1755-T-30AEP, 2014 WL 4540328, at *1 (M.D. Fla. Sept. 11, 2014) (concluding that in the absence of "a final determination as to liability and damages" with respect to the underlying claim, "this Court cannot determine that the value of the bad faith claim meets the jurisdictional threshold of $75,000"); *Warner v. Safeco Ins. Co. of Illinois*, No. 8:14-CV-2652-T-36TGW, 2014 WL 12614501, at *2 (M.D. Fla. Dec. 15, 2014) (rejecting "suggesti[on] that the allegations in the bad faith claim may be used to establish the amount in controversy for the coverage claim"); *Montanez v. Integon Indem. Corp.*, No. 6:15-CV-25-ORL-22KRS, 2015 WL 12839272, at *2 (M.D. Fla. Apr. 1, 2015) ("The Court agrees with the authorities from within this District finding that a premature bad faith claim has no present value for purposes of determining the amount of controversy."); *Berg v. Cigna Life Ins. Co. of New York*, No. 2:15-CV-270-FTM-38CM, 2015 WL 12843197, at *1 (M.D. Fla. May 6, 2015) (ordering plaintiff to show cause regarding subject matter jurisdiction given her reliance upon "her non-ripe bad faith claim to meet the amount in controversy prong").

determination in the capacity of insureds under their own policies, but rather as inchoate third-party beneficiaries of a policy covering Mr. Aigen and Hi Mountain.[10]

The deadline for Plaintiffs to file a new motion for leave to amend and accompanying jurisdictional/discretionary brief is no later than December 20, 2017.

**DONE** and **ORDERED** this 6th day of December, 2017.

*[signature]*

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[10] *See Wilton*, 515 U.S. at 290, 115 S. Ct. at 2144 ("We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or <u>cases in which there are no parallel state proceedings</u>.") (emphasis added); *see also Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 999 (8th Cir. 2005) ("We agree with our sister circuits[, *i.e.*, the Fourth, Sixth, and Tenth] that a federal district court is afforded greater discretion in determining whether to exercise jurisdiction over a declaratory judgment action than in other circumstances."); *id*. ("We also agree that the district court's discretion is limited when no parallel proceedings are pending in state court, because in those circumstances there are less-pressing interests of practicality and wise judicial administration."). In *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), the Eleventh Circuit adopted a non-exhaustive list of abstention factors for a district court to consider when a parallel case is pending in state court, *id.* at 1330-31, "in furtherance of the Supreme Court's admonitions in *Brillhart* [*v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942)] and *Wilton*." *Ameritas*, 411 F.3d at 1331. What remains less clear within the Eleventh Circuit is the level of discretion and/or framework applicable when a parallel proceeding is absent from the discretionary equation. *Cf. Swords*, 2017 WL 4180889, at *6 ("The Court does not need to analyze the *Ameritas* factors because this [is] not a case of parallel litigation.").